# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**18-0970**
UNPUBLISHED

| | |
|---|---|
| NORA DEMPSEY,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: February 17, 2021<br><br>Special Processing Unit (SPU); Findings of Fact; Onset; Tetanus-diphtheria Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Claudia Barnes Gangi, U.S. Department of Justice, Washington, DC,* for Respondent.

## **FINDINGS OF FACT**[1]

On July 6, 2018, Nora Dempsey filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus vaccination administered on February 21, 2017. Petition at 1.[3] The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner filed an amended petition on December 23, 2019 to allege causation-in-fact in addition to her Table claim. ECF No. 29.

For the reasons discussed below, I find the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, consistent with the Table requirements for a SIRVA claim.

I.   **Relevant Procedural History**

As noted above, the case was initiated in July 2018. On July 6, 2019, Respondent filed his Rule 4(c) Report recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 19. Respondent argued that, despite two intervening medical appointments, Petitioner failed to seek treatment for her shoulder injury for four months after her vaccination. *Id.* at 4. Additionally, Respondent asserted that Petitioner had not proven actual causation. *Id.* at 5.[4]

On September 19, 2019 and January 21, 2020, Petitioner filed updated medical and chiropractic records, a supplemental declaration, witness statements, a letter from her primary care physician, medical literature, and a bank statement. ECF Nos. 23, 30. Also on January 21, 2020, Petitioner filed a motion for a ruling on the record ("Motion"). ECF No. 31. Respondent filed a response to the Motion on February 20, 2020, and on February 27, 2020, Petitioner filed her reply. ECF Nos. 33, 34.

II.   **Issue**

At issue is whether the onset of Petitioner's left shoulder pain was within 48 hours after vaccination, as required by the Vaccine Injury Table for a SIRVA injury after receipt of the tetanus vaccine. 42 C.F.R. § 100.3(a) I.C (2017) (tetanus vaccination). The Table's "Qualifications and Aids to Interpretation" ("QAI") for a SIRVA-based claim also require that a petitioner's pain have occurred within this same 48-hour timeframe. 42 C.F.R. § 100.3(c)(10).

III.   **Authority**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). I have discussed the factors to be considered in determining whether a petitioner has met their burden in several recent decisions. I fully adopt and hereby

---

[4] Respondent also asserted that Petitioner failed to produce contemporaneous medical records that reflect a decrease in her left shoulder range of motion during the four-month period following vaccination. However, Respondent later acknowledged that "although reduced range of motion is included in the definition of a Table SIRVA, there is no requirement that the limitation to range of motion occur within a particular period of time following vaccination." ECF Nos. 19, 33.

incorporate my prior discussion in section III of the following decisions: *Marrow v. Sec'y of Health & Hum. Servs.*, No. 17-1964V, 2020 WL 3639775 (Fed. Cl. Spec. Mstr. June 2, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 17-1050V, 2020 WL 3729432 (Fed. Cl. Spec. Mstr. June 5, 2020); *Decoursey v. Sec'y of Health & Hum. Servs.*, No.18-870V, 2020 WL 4673228 (Fed. Cl. Spec. Mstr. July 9, 2020).

In sum, a special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of the petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). Moreover, a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### IV. Finding of Fact

I make the following finding regarding onset after a complete review of the record to include all medical records, declarations, Respondent's Rule 4 report, and briefing by the parties. Specifically, I base the findings on the following evidence:

- Ms. Dempsey was administered a tetanus vaccine in her left shoulder on February 21, 2017. Ex. 2.

- In her declaration, Ms. Dempsey averred that she experienced "instantaneous left shoulder pain and it felt like my shoulder exploded." Ex. 1 at 1-2. *See also* Ex. 18 at 1.

- Myrtle Mazinke, Ms. Dempsey's neighbor, submitted a declaration dated September 13, 2019. Ex. 15. In it, she asserted "I believe I saw and spoke with [Ms. Dempsey] the day after she went to urgent care. [Ms. Dempsey] complained to me [about] pain in her left shoulder from the tetanus shot." *Id.* at 2.

- Barbara Loyd, another of Ms. Dempsey's neighbors, submitted a declaration dated September 18, 2019. ECF No. 17. In it, she stated that Ms. Dempsey "called me either the day she got the inoculation or the following day to alert me of her [shoulder] problem." *Id.* at 2.

- In the petition, it is alleged that Ms. Dempsey returned to Main Street Urgent Care "[a]bout four days after receiving the tetanus vaccination in her left shoulder." Pet. at 2. In her supplemental declaration, however, Ms. Dempsey

3

acknowledged that this visit actually occurred on March 6, 2017 (almost two weeks post-vaccination), but that its purpose was "to complain about the ongoing pain in my left shoulder." Ex. 18 at 2. *See also* Ex. 1 at 2. In support of this assertion, Ms. Dempsey filed her bank statement reflecting that a refund from the urgent care facility was credited to her account on or around March 6, 2017. Ex. 14 at 1.[5] No specific record from this particular urgent care visit has been filed that would corroborate Petitioner's allegations about the purpose of the visit.

- Ms. Dempsey presented to Dr. Mark Riddoch, her primary care physician, on March 23, 2017 (a little over one-month post-vaccination) for her annual physical examination. Ex. 4 at 1-6. The medical record documenting this visit does not indicate that Petitioner complained of shoulder pain. *Id.*

- In her supplemental affidavit, Ms. Dempsey attests that she reported her left shoulder pain to Dr. Riddoch and, in response, "[h]e explained I had frozen shoulder, but then moved on to basic Insurance requirements for a wellness exam." Ex. 18 at 2. *See also* Ex. 1 at 2.

- Ms. Dempsey presented to her allergist, Dr. Jason Peet, on April 6, 2017 (a little over six weeks post-vaccination) regarding a rash. Ex. 5 at 1-2. The medical record documenting this appointment indicates that joint pain, joint stiffness, and joint swelling were not found. *Id.* at 1. There is no indication that Ms. Dempsey mentioned her left shoulder during this visit. *Id.* at 1-2.

- In her affidavit, Ms. Dempsey states that she did not report her left shoulder pain during her April 6, 2017 appointment with Dr. Peet "because I was seeing my allergist." Ex. 1 at 2.

- On June 21, 2017, (four months after vaccination), Ms. Dempsey presented to Dr. Clint Beicker, an orthopedist, with a complaint of shoulder stiffness. Ex. 6 at 9. Ms. Dempsey stated that her symptoms began "about 2/2017." *Id.*

- Ms. Dempsey underwent an initial physical therapy evaluation on June 28, 2017. Ex. 7 at 1-4. In addition to discussing right wrist and thumb pain, she reported a "heavy and numb feeling after she was given a tetanus shot . . . she had immediate shoulder pain from injection." Ex. 7 at 1. The date of onset was noted as January 2017. *Id.*

- Ms. Dempsey presented to Dr. Peter Romanick, an orthopedist, on October 10, 2017 with a complaint of left shoulder pain. Ex. 6 at 16-19. Dr. Romanick noted that "[Petitioner] says in February she had a tetanus shot, since then she has had pain and a frozen shoulder." *Id.* at 16.

---

[5] Respondent notes that "[a]lthough the transaction was recorded on March 6, 2017, the actual payment appears to have been made on March 3, 2017." Resp. at 10, n.2.

4

- On October 16, 2017, Ms. Dempsey began a second course of physical therapy. Ex. 7 at 43-46. The initial evaluation indicates that Ms. Dempsey "[h]ad a tetanus shot in left shoulder back in January 2017 and had some pain immediately after injection." *Id.* at 43.

- Ms. Dempsey presented to Dr. Drew Wallace, her chiropractor, on April 3, 2018. Ex. 9 at 1. The record documenting this visit reflects that Ms. Dempsey reported that she "had a flu vaccine injected into her left upper arm and shoulder on 2-21-17.[6] She noted immediate pain with the injection, and within several days [she] had pain and difficulty moving her shoulder and arm." *Id.*

Overall, the evidence offered in support of Petitioner's onset allegation is not especially robust, and Respondent has raised reasonable questions about the matter. Nevertheless, I find that the above items of evidence collectively establish (if weakly) that Ms. Dempsey's shoulder pain most likely began within 48 hours of receiving the February 21, 2017 tetanus vaccine. While some of Petitioner's medical records do not reflect a precise date of onset and include vague temporal references (i.e., "*since* receiving a tetanus shot. . ."), or indicate that her shoulder pain began in January 2017, on at least three occasions she reported that her pain began in February 2017. *See, e.g.,* Ex. 6 at 9, 16; Ex. 9 at 1. Moreover, in one instance, she noted "immediate pain with injection." Ex. 9 at 1. This history is further supported by Petitioner's own declarations as well as her witness statements which describe the onset of Petitioner's condition in greater detail.

Ms. Dempsey's assertion that she returned to Main Street Urgent Care to complain about her shoulder also provides some support for her onset claim. Although the precise date of this visit and the reason she was issued a refund remain unclear, her bank statement suggests that she presented to the administering facility within two weeks of receipt of her vaccination. Given the temporal association and Petitioner's own unrebutted assertions, it can be concluded on this slim record that that the purpose of Ms. Dempsey's visit was as she alleges - to complain about her shoulder pain.

Admittedly, there is evidence of *two* intervening medical appointments at which time Petitioner made no mention of her shoulder injury or its purported onset. First, there is the record of the March 23, 2017 wellness exam with Dr. Riddoch, her primary care physician. Resp. at 8. Petitioner attests that she did mention her shoulder pain at this visit, but (as Respondent observes) the record itself is silent on the issue. Ex. 1 at 2; Ex. 18 at 2; Resp. at 8.[7] Second, Petitioner had an appointment approximately six weeks

---

[6] Respondent has not argued that this misstatement, regarding the type of vaccine, has any bearing on his decision to contest onset.

[7] Respondent also argues that the varying level of detail offered in Petitioner's original and supplemental declarations establish contradictions in her purported statements to Dr. Riddoch. Resp. at 9. Although it is

5

post-vaccination with an allergist, at which time she also failed to mention her shoulder pain.

Of these visits, the second gives me less pause than the first. Petitioner's allergist appointment was for the purpose of discussing "skin problems." Ex. 5 at 1. I would not expect an individual to discuss shoulder pain at such a specialist appointment. *See, e.g., Williams v. Sec'y of Health and Human Servs.,* 17-830V, 2019 WL 1040410, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (finding onset of SIRVA within 48 hours despite four intervening medical encounters that did not reference shoulder pain because the medical appointments "were for specific medical concerns unrelated to petitioner's left shoulder concern."). An intervening medical encounter with a specialist (whose practice is generally unrelated to the musculoskeletal system or pain management) is not enough to *disprove* onset, especially given the overwhelmingly consistent assertions about close-in-time onset at all subsequent medical encounters.

The visit with Dr. Riddoch, however, can also be distinguished. It is certainly reasonable to expect a person suffering from a recent shoulder injury to raise the matter at a general physical exam. In a case where there was a much longer gap from vaccination to first recorded instance of complaints, or other record inconsistencies, this omission would be more damning. But in *this* case, Petitioner clearly began complaining "on the record" of shoulder pain within four months of vaccination, and she consistently related onset to the vaccination. She has also offered reasonable and persuasive third-party witness support for her contentions. The overall weight of the evidence is sufficiently supportive of her onset allegations to find in her favor, even if her case would be better supported by corroborating intervening medical record evidence, as Respondent seems to desire.

Finally, and on a related note, I do not find the four-month treatment delay to be dispositive regarding the issue of onset. Ms. Dempsey's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory. *See, e.g., Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Human Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v.*

---

reasonable as a general matter to question the veracity of statements prepared after-the-fact and once litigation has begun, I do not find that in this case the fact that a second statement is more detailed, or varies somewhat from the first, is a strong basis for concluding that *none* of the alleged facts (that Petitioner discussed her shoulder with Dr. Riddoch) likely occurred.

*Sec'y of Health & Human Servs*., 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

Accordingly, I find there is preponderant evidence to establish that the onset of Ms. Dempsey's left shoulder pain occurred within 48 hours of the February 21, 2017 flu vaccination.

### V.     Scheduling Order

Given my finding of fact regarding onset – and specifically that it is consistent with the Table requirements of a SIRVA claim – Respondent shall evaluate and provide his current position regarding the merits of Petitioner's case.

Respondent shall file, by no later than **Friday, March 19, 2021**, a status report indicating whether he intends to defend this matter in any regard other than onset.

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master